2024 IL App (1st) 240521-U

FIFTH DIVISION
June 28, 2024

No. 1-24-0521B

NOTICE: This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 24 MC 110046901 |
| | ) | |
| JAYLEN MURPHY, | ) | Honorable |
| | ) | Susana Ortiz, |
| Defendant-Appellant. | ) | Judge Presiding. |

JUSTICE MIKVA delivered the judgment of the court.
Justice Lyle concurred in the judgment.
Presiding Justice Mitchell dissented.

**O R D E R**

¶ 1   *Held*:  The circuit court's order granting the State's petition for pretrial detention is reversed. The court did not err in finding the proof was evident or the presumption great that defendant had committed a qualifying offense. However, there was no evidence, beyond the offense itself, that he was dangerous and, thus, the finding that no conditions could mitigate the real and present threat to the safety of the community or reasonably assure that defendant would not commit other crimes was an abuse of discretion.

¶ 2   Defendant Jaylen Murphy appeals from the circuit court's order detaining him before trial, under the dangerousness standard set out in section 110-6.1 of the Code of Criminal Procedure of 1963 (Code) (725 ILCS 5/110-6.1 (West 2022)), as amended by Public Act 101-652, § 10-255,

and Public Act 102-1104, § 70 (eff. Jan. 1, 2023), commonly known as the Pretrial Fairness Act. Mr. Murphy argues that the State failed to prove by clear and convincing evidence that he committed a qualifying offense or to show that no condition or combination of conditions could mitigate any threat posed by his release or ensure that he would not commit other crimes on release. For the reasons that follow, we reverse the court's order of detention.

¶ 3                                   I. BACKGROUND

¶ 4    Mr. Murphy is charged with attempt armed robbery with a firearm (720 ILCS 5/8-4, 18-2(a)(2) (West 2022)), a detainable offense (see 725 ILCS 5/110-6.1(a)(1.5) (7) (West 2022)), as well as a misdemeanor violation of the Firearm Concealed Carry Act for using a firearm while committing an attempt armed robbery (430 ILCS 66/70(e) (West 2022)).

¶ 5    On February 20, 2024, the State petitioned to detain Mr. Murphy before trial pursuant to section 110-6.1 of the Code (725 ILCS 5/110-6.1 (West 2022)). The State represented in its petition that Mr. Murphy "pointed a firearm at the victim and demanded money from the victim but the victim did not have any money" and that "officers recovered a loaded Glock 19 9mm from the Defendant's person." The State argued that Mr. Murphy posed a real and present threat to the safety of any person or persons or the community, based on the specific articulable facts of the case and that there was no condition or combination of conditions in section 10(b) of the Code (725 ILCS 5/110-10(b) (West 2022)) that could mitigate that risk.

¶ 6    Mr. Murphy was present and represented by counsel at the February 20, 2024, hearing on the State's petition for pretrial detention. The Court began by asking about Mr. Murphy's score on both the criminal activity and failure to appear scales. The representative from Pretrial Services advised the court that Mr. Murphy's scored a one on both indices—the lowest possible score.

¶ 7    The State proffered that at approximately 6:18 a.m. on February 19, 2024, the victim was

2

returning to his apartment building when Mr. Murphy approached displayed a gun and demanded money from him. The victim showed Mr. Murphy that his wallet was empty. At that point Mr. Murphy turned around and walked away. The victim went inside his apartment building, called 911, and provided a description of a black male wearing a dark, possibly purple, jacket and black jeans.

¶ 8 Officers arrived approximately 20 minutes later. They found Mr. Murphy across the street and about one building over. He wore a dark blue-colored jacket and black pants. Mr. Murphy was detained. The victim identified him as the person who had tried to rob him. A "Glock 19" was found in a holster in his waistband. There was one live round in the chamber and several live rounds in the magazine.

¶ 9 The State told the court that Mr. Murphy had a valid concealed carry license (CCL) and a firearm owner's identification (FOID) card. The State also told the circuit court that the incident was captured on the surveillance video of a business located next door to the victim's residence.

¶ 10 At that point, the State advised the court that it was "seeking discretionary conditions of pretrial release: No contact with the victim in the case." The State pointed out that this was Mr. Murphy's first arrest.

¶ 11 The State then proceeded to present what it viewed as aggravating factors. It emphasized that Mr. Murphy had CCL training that would have shown him that he was not allowed to use the gun in this manner. The State also argued that the victim would be "forever" traumatized.

¶ 12 By the end of its argument, the State appears to have changed its position and was "seeking detention."

¶ 13 Defense counsel responded that the proof was not evident nor the presumption great that Mr. Murphy had committed the charged offense. The defense had not heard the 911 calls or seen

3

the transcripts; no descriptions were noted in police reports; the descriptions in the proffer did not match was Mr. Murphy was actually wearing or mention that he was wearing a jacket with a Cubs logo on it; and the defense had not seen the surveillance videos.

¶ 14    Counsel also pointed to the low scores from pretrial services, the fact that this was Mr. Murphy's first arrest, and the fact that the complaining witness was not physically harmed. Counsel noted that Mr. Murphy lived with his mother and had lived at his current address his entire life. He worked full time as an unarmed security guard for a Target store and was the sole source of support for his four-month-old son and the mother of his son, who had recently lost her job. He also attended church regularly. Defense counsel argued that release, with possible conditions of release such as pretrial monitoring, would be appropriate.

¶ 15    The court found that the State had shown by clear and convincing evidence that the proof was evident and the presumption great that Mr. Murphy had attempted to commit armed robbery. The court also found that Mr. Murphy presented a clear and present danger not only to the victim but to the entire community. The court reasoned that "this incident alone makes him a clear and present danger." It noted that Mr. Murphy knew what was legal because of his CCL training and his work as a security guard. The court concluded that "based upon the brazen violence that was displayed here of taking a loaded gun" and "pointing it at close range at another individual" no conditions less restrictive than detention could ensure the safety of the community.

¶ 16                                II. JURISDICTION

¶ 17    The circuit court entered its order granting the State's petition for pretrial detention on February 20, 2024, and Mr. Murphy filed a timely notice of appeal from that order on March 5, 2024. We have jurisdiction over this appeal under section 110-6.1(j) of the Code (725 ILCS 5/110-6.1(j) (West 2022)) and Illinois Supreme Court Rule 604(h) (eff. Dec. 7, 2023) which govern

appeals from orders denying the pretrial release of a criminal defendant.

¶ 18                                    III. ANALYSIS

¶ 19     Section 110-6.1(e) of the Code (725 ILCS 5/110-6.1(e) (West 2022)) provides that "[a]ll defendants shall be presumed eligible for pretrial release." The State must seek pretrial detention by filing a timely, verified petition. *Id.* § 110-6.1(a), (c). To obtain that relief here, the State needed to prove by clear and convincing evidence (1) that "the proof [was] evident or the presumption great" that the Mr. Murphy committed a qualifying offense, (2) that "based on the specific articulable fact of the case" Mr. Murphy "pose[d] a real and present threat to the safety of any person or persons or the community" (the dangerousness standard), and (3) that "based on the specific articulable fact of the case" there was "no condition or combination of conditions" set forth in section 110-6.1(b) of the Code could mitigate either that safety risk or the defendant's willful flight. *Id.* § 110-6.1(e)(1)-(3).

¶ 20     "The rules concerning the admissibility of evidence in criminal trials do not apply to the presentation and consideration of information at [a pretrial detention] hearing." *Id.* § 110-6.1(f)(5). Rather, either side "may present evidence *** by way of proffer based upon reliable evidence." *Id.* § 110-6.1(f)(2). The court's ultimate decisions "regarding release, conditions of release, and detention prior to trial must be individualized, and no single factor or standard may be used exclusively to order detention." *Id.* § 110-6.1(f)(7).

¶ 21     Mr. Murphy has elected to stand on his notice of appeal rather than file a memorandum in support of his arguments, as he is permitted to do under Rule 604(h)(2) (Ill. S. Ct. R. 604(h)(2) (eff. Dec. 7, 2023)). He challenges the circuit court's finding that the proof is evident or the presumption great that he committed a qualifying offense and its finding that no condition or combination of conditions of release could reasonably mitigate the threat of danger to the

community or ensure that he would not commit other crimes. The State has filed a response to defendant's appeal, asking that we affirm the circuit court's order of detention.

¶ 22    Section 110-6.1 of the Code does not establish a standard of review for orders granting, denying, or setting conditions of pretrial release. We have concluded that our review of such orders is twofold. We review the circuit court's factual findings under the manifest-weight-of-the-evidence standard. *See In re C.N.*, 196 Ill. 2d 181, 208 (2001) (applying a similar standard of review for the requirement of clear and convincing evidence by the State in termination-of-parental rights proceedings). "A finding is against the manifest weight of the evidence only if the opposite conclusion is clearly apparent or if the finding is unreasonable, arbitrary, or not based on the evidence presented." *In re Jose A.*, 2018 IL App (2d) 180170, ¶ 17.

¶ 23    As to the court's decision regarding whether there are any conditions of release that could mitigate such risks, we believe an abuse of discretion standard is most appropriate. Courts are "endowed with considerable discretion" where, as here, they are called upon to weigh and balance a multitude of factors and arrive at a decision that promotes not only "principles of fundamental fairness" but "sensible and effective judicial administration." *Czarnecki v. Uno-Ven Co.*, 339 Ill. App. 3d 504, 508 (2003) (noting that this is the standard of review when a court rules on a *forum non conveniens* motion). "An abuse of discretion occurs when the circuit court's decision is 'arbitrary, fanciful or unreasonable,' or where 'no reasonable person would agree with the position adopted by the [circuit] court.' " *People v. Simmons*, 2019 IL App (1st) 191253, ¶ 9 (quoting *People v. Becker*, 239 Ill. 2d 215, 234 (2010)).

¶ 24    Here, the circuit court's finding, based on the State's proffer, that the proof was evident or the presumption great that Mr. Murphy committed the charged offense was not against the manifest weight of the evidence. There was an immediate 911 call to the police, Mr. Murphy matched at

least in part the victim's description; he was found across the street from the location where the crime occurred, and he was identified (albeit in a show up) by the victim. We cannot say that the circuit court's conclusion that this was sufficient was unreasonable. However, that finding does not deprive Mr. Murphy of the presumption of innocence. Because of that presumption, he must be allowed to go on with his life pending trial, unless the State can make the additional showings required by section 110-6.1 of the Code.

¶ 25    In this case the only evidence that pretrial release with conditions could not mitigate any risk was the proffered evidence of the crime itself. Nothing in Mr. Murphy's background—no arrests, no convictions, a FOID card, a CCL, a job, stable housing—suggested a danger to the community or that he would commit further crimes.

¶ 26    We understand that sometimes, perhaps often, the facts of the charged offense itself will support a request for pretrial detention and make the necessary showing that a defendant poses a danger or is likely to not comply with the conditions of release. However, in this case, based on the State's proffer, Mr. Murphy walked away from the victim, did not resist arrest, and never fired the gun. The specific allegations of this offense do not support the finding that any danger Mr. Murphy represents to the community could not be mitigated by reasonable conditions of release.

¶ 27    We reverse and remand to the circuit court to consider what those conditions should be. Certainly, Mr. Murphy's gun rights will be suspended and he should be denied access to any firearms. Also, electronic monitoring could be put in place, if the circuit court considers it helpful and necessary.

¶ 28    The dissent insists that in so holding we "undermine[ ] the rule of law by simply substituting [our] judgment for that of the trial court." But the trial court, like this court, is bound by the words of the statute. Section 110-6.1 of the code makes clear both that a defendant's

7

presumption of innocence is not affected in any way by pretrial detention proceedings and that *all* defendants "shall be presumed eligible for pretrial release." 725 ILCS 5/110-6.1(e), (l) (West 2022). That presumption of release can be overcome only where something in the "specific articulable facts of the case" or in the defendant's background demonstrates that no combination of conditions can mitigate a "real and present" threat to safety. *Id.* § 110-6.1(e)(3). Here there was nothing beyond the crime he was charged with—nothing about Mr. Murphy's background or the particular facts of this case—that could be viewed as overcoming that presumption. If the legislature intended for certain qualifying offenses to *automatically* result in pretrial detention, it certainly would have made that clear. Instead, it articulated a three-step process applicable to all defendants, no matter the charges they face. There must be evidence of a qualifying offense, a finding that the defendant himself is dangerous, and a *further* finding that no conditions of release can mitigate that threat. Despite the careful job done by the trial court here to articulate the appropriate standards, the reality is there was simply nothing beyond the commission of the offense itself to support the court's conclusion that Mr. Murphy could not be released pending a trial in which we must presume that he could still be exonerated of this crime.

¶ 29                          VI. CONCLUSION

¶ 30     For the above reasons, we reverse the circuit court's order granting the State's petition for pretrial detention and remand to allow the circuit court to impose the appropriate conditions for pretrial release.

¶ 31     Reversed.


¶ 32     PRESIDING JUSTICE MITCHELL, dissenting:

¶ 33     Does a criminal defendant accused of pointing a loaded, 9mm Glock handgun at a random

victim in a robbery attempt pose a danger to the community? After weighing the facts and circumstances of this particular case, the trial court answered this question, "Yes." Astonishingly, however, the majority holds that conclusion to be an abuse of discretion. An abuse of discretion occurs where no reasonable person would take the position adopted by the trial court or where the trial court acts arbitrarily, fails to exercise conscientious judgment, or ignores recognized principles of law. See *People v. Cross*, 2022 IL 127907, ¶ 24. Because I believe that there is no basis in law or fact to characterize the trial court's ruling as an abuse of discretion, I respectfully dissent.

¶ 34    First, the detention ruling at issue is squarely entrusted by law to the trial court's discretion. *People v. Carpenter*, 2024 IL App (1st) 240037, ¶ 10; *People v. Whitmore*, 2023 IL App (1st) 231807, ¶ 24. The majority concedes as much. *Supra*, ¶ 23. So, this is not a case where the lower court exceeded its lawful authority or applied an erroneous legal standard.

¶ 35    Second, the trial court recognized the discretionary nature of its decision and plainly weighed competing factors in reaching its conclusion that the defendant posed a danger to the community:

> "I do find under these circumstances that [the defendant] does present a clear and present danger to this particular complaining witness, but to the entire community as well.
>
> This appears to be a random act. This person was chosen at random, asked for their money at gunpoint. It doesn't get more dangerous than having a loaded gun pointed at one.
>
> I appreciate the fact that he doesn't have any other criminal history, that he comes back a 1 and 1, pretrial supervision on the Public Safety Assessment. But this incident alone makes him a clear and present danger to all members of the community.
>
> ***

His lack of criminal history, the no new violent criminal actively [sic] flag, the fact that no one was physically injured. Certainly having a gun pointed at one at close range has to have life-long implications, maybe trauma or mental injuries, but I agree with counsel there are no physical injuries thankfully. But what occurred there was one trigger pull away from death or great bodily harm. Luckily it did not occur in this instance. But based upon the brazen violence that was displayed here of taking a loaded gun, pointing it at close range at another individual, that any least restrictive means or combination of conditions would ensure the safety of the community."

So this is not a case where the trial court failed to exercise discretion. She did not rule one way or the other because she "always" or "never" rules in a particular manner. Rather the trial court made an individualized determination based on the unique circumstances of this case.

¶ 36    Third, the record more than establishes sufficient facts upon which the trial court could reasonably conclude that this defendant poses a risk to the community. The majority concedes that the proof was evident and the presumption great that our defendant committed the attempted armed robbery. There was an almost immediate call to the police, the defendant matched the victim's description, the defendant was apprehended in close proximity to the scene, and the victim identified the defendant. Further, the defendant accomplished his crime using a loaded gun. While violent crimes can certainly be committed with other weapons, guns present a particular risk to public safety. The dangerousness of guns and their use in violent crime is why the General Assembly has provided for a 15-year sentence enhancement for armed robberies committed with a firearm. 720 ILCS 5/18-2 (West 2022). A conviction for attempted armed robbery carries a 4 to 15 year sentence, again evidencing a legislative judgment about the danger to the community inherent in such crimes. *Id.* § 5/8-4(c)(2); 730 ILCS 5/5-4.5-30 (West 2022).

¶ 37    In justifying its contrary conclusion, the majority employs a perverse logic. Because the defendant "walked away" (*supra*, ¶ 7) from his victim when it turned out that the victim had no money, "did not resist arrest," and "never fired the gun," (*supra*, ¶ 26) the majority believes that our gun-toting defendant does not present a community threat. Nonsense. A defendant's failure to commit *other crimes* does not mitigate the danger presented by the crime he did commit. Most any crime could be made worse, and any defendant more dangerous, by committing *more* crimes. The majority simply fails to address the danger presented to the community in this defendant's crime as charged. As we recently held in *Carpenter*, the "nature and circumstance of the offense charged is the *prime* consideration in determining the conditions of release, if any ([725 ILCS 5/110-5(a)(1)]), and in denying pretrial release (*id*. § 110-6.1(a)), including making the dangerousness determination (*id.* § 110-6.1(g)(1))." (Emphasis in original.) 2024 IL App (1st) 240037, ¶ 14. The majority's suggestion that facts and circumstances of the crime charged cannot justify a detention order simply defies the plain language of the Code.

¶ 38    The majority's suggestion that on remand the trial court could consider conditions less restrictive than detention is nothing short of disingenuous. The trial court *already* considered less restrictive alternatives and explained at length why those conditions do not mitigate the risk to the community:

> "[S]ome desperate situation is apparently going on that would take [the defendant] to a place where he would take a firearm that was lawfully owned by him and point it at another individual at close range and demand their property.
>
> I do not find that electronic monitoring or home confinement or GPS would eliminate or mitigate the threat that he presents to the community.

There is essential unsupervised movement on electronic monitoring. There is no supervision on home confinement. There are devises [sic] that rely upon [the defendant's] compliance with not leaving or doing things that he is not supposed to do while on electronic monitoring. But given the level of action that he took in this case to obtain property, I do not find that the risk of placing him on electronic monitoring or home confinement is outweighed -- I do not find that the danger is mitigated by whatever level of supervision that electronic monitoring and home confinement provides.

And so based upon all of the aforementioned, I do not find that anything less than detention will ensure the safety of the community."

Our court has summarily affirmed detention orders in cases involving gun crimes. This is precisely because of the relative ease with which a defendant can obtain an illegal gun and the prevalence of gun violence in communities throughout Cook County. See *People v. Gunn*, No. 1-24-0118B (2024) (unpublished summary order under Illinois Supreme Court Rule 23(c)) (Affirming the circuit court where the court expressed that "[e]lectronic monitoring is a concern for me in these cases. It sounds restrictive. It's not necessarily restrictive. It does not guarantee that a person will follow the protocol and the rules set forth in the contract for electronic monitoring. It allows people movement for various reasons, guaranteed two days a week, possibly more for work, putting people in the community. Based on [the defendant's] history with guns, I have concerns about that."); *People v. Wheaton*, No. 1-24-0742B (2024) (unpublished summary order under Illinois Supreme Court Rule 23(c)) (Affirming the circuit court where the court found that "Pretrial Services in this case did not prevent further access to illegal firearms, because [the defendant was] before the Court on a new charge of possessing an illegal firearm" and that "[e]lectronic monitoring does not prevent the acquisition of illegal firearms***.")

12

¶ 39    Among the unfortunate consequences of the majority's decision is that it undermines the rule of law by simply substituting its judgment for that of the trial court. It promotes a cynical view of judicial decision-making where outcomes depend on personal preference. Courts of review have a responsibility to promote consistency and coherence in the law to guide trial courts. That is particularly so here where we are interpreting a relatively new statute and should be attempting to promote a stable body of legal precedent. Our review for abuse of discretion is designed to maintain a proper relationship between the trial and appellate courts, and it is intended as a very real limitation on appellate judicial power. See generally, Timothy J. Storm, *The Standard of Review* Does *Matter: Evidence of Judicial Self-Restraint in the Illinois Appellate Court*, 34 S. Ill. Univ. L. J. 73 (2009). "If you do not play chess by the rules, you are not doing anything. If you do not play judging by the rules *** you are doing something, and it may be something you value more than you do the game of judging as it is supposed to be played." Richard A. Posner, *How Judges Think* 91 (Harv. Univ. Press 2008).

¶ 40    For all these reasons, I would affirm the trial court's detention order as the product of a sound exercise of judicial discretion.